IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| V. | *   CRIMINAL NO. W-21-CR-049(12) |
| | * |
| ALEAH FREITAG | * |

FACTUAL BASIS

Had this case proceeded to trial, the United States Attorney for the Western District of Texas was prepared to prove and would prove beyond a reasonable doubt that:

Beginning on or about January 1, 2020, the exact date unknown to the Grand Jury, and continuing until the present time, in the Western District of Texas and elsewhere, Defendant,

**ALEAH FREITAG,**

did unlawfully, knowingly and intentionally combine, conspire, confederate and agree together and with each other and others, to the Grand Jury known and unknown, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, that is to say, they conspired to possess with intent to distribute and to distribute at least 500 grams of a mixture or substance containing a detectable amount of Methamphetamine, a Schedule II Controlled Substance, contrary to Title 21, United States Code, Section 841(a)(1).

**QUANTITY OF CONTROLLED SUBSTANCE INVOLVED IN THE CONSPIRACY**

The quantity of the mixture or substance containing Methamphetamine involved in the conspiracy and attributable to each Defendant as a result of each Defendant's own conduct and as a result of the conduct of other conspirators reasonably foreseeable to each Defendant is as follows:

| DEFENDANT | QUANTITY | STATUTE |
|---|---|---|
| ALEAH FREITAG (12) | At least 50 grams | 21 U.S.C. § 841(b)(1)(B)(viii) |

All in violation of Title 21, United States Code, Section 846.

Specifically, the United States Attorney would prove beyond a reasonable doubt that:

In the summer of 2020, the FBI, the Temple Police Department (TPD), the Texas Department of Public Safety (DPS), and the Drug Enforcement Administration (DEA), undertook the investigation of an organization in central Texas that was distributing multi-kilogram quantities of methamphetamine.  Agents identified **ETHAN ELI TINNEY** as a methamphetamine source of supply and learned that he had multiple methamphetamine sources of supply located in the metro Dallas and metro Houston areas.  **TINNEY** would travel frequently to these areas to obtain kilogram quantities of methamphetamine that he then distributed in multiple central Texas counties.   Beginning in July 2020, law enforcement began conducting controlled buys of methamphetamine from various members of the conspiracy.  As the investigation progressed, agents were able to conduct multiple court-authorized phone interceptions on **TINNEY** and others.  Most of the overt acts occurred within the Western District of Texas.

**ETHAN ELI TINNEY** – **TINNEY** was a local source of supply for methamphetamine in the Central Texas area.  He was intercepted over several different telephones in thousands of conversations regarding the trafficking of methamphetamine with most of the coconspirators. **JOSE GUTIERREZ** was originally a supplier of kilos of methamphetamine to **TINNEY**.  The investigation then revealed that **ANTHONY GUTIERRZ** was the supplier to **JOSE GUTIERREZ** and had the source of supply in Mexico.  Towards the end of the court-authorized wiretap on **TINNEY'S** phone**,** **TINNEY** and **JOSE GUTIERREZ** had a falling out, and **TINNEY** began dealing directly with **ANTHONY GUTIERERZ**, without **JOSE GUTIERREZ**

2

acting as the middleman.  The amounts that **TINNEY** was receiving, from each of the **GUTIERREZ'**, was in amounts ranging from one to two kilograms at a time.  Intercepts also confirm that he was supplied methamphetamine by OSCAR NEGRETE in amounts ranging from one to three kilograms.  NEGRETE was an early source of supply of methamphetamine to **TINNEY.**  Agents have listened to jail calls between him, LEON BOYD and **TINNEY.** Based on the intercepts, the case agent believes that NEGRETE himself supplied **TINNEY** with more than 10 kilos of methamphetamine.  According to the intercepts, **TINNEY** frequently carried a firearm with him while conducting these methamphetamine transactions.  During the investigation, law enforcement learned that he had suppliers with direct connections to methamphetamine coming directly from Mexico.  Using a confidential informant, law enforcement has conducted several controlled buys of methamphetamine from him.  During an intercepted call on January 7, 2021, **TINNEY** discussed with **LESLEIGH BITTNER** the fact that he had been recently arrested for some outstanding warrants, but that they (police) did not find his firearm when he was arrested.  **TINNEY** utilized CashApp with several of his coconspirators for them to pay (or partially pay) for methamphetamine.  He is responsible for the distribution of at least 500 grams of methamphetamine, but his relevant conduct is greater than ten (10) kilograms.

<u>**SARAH ELIZABETH CRIGGER -**</u> Pursuant to the Court authorized interception of TARGET TELEPHONE #1, #2, and #3,  agents learned that **CRIGGER** frequently obtained multi-ounce quantities of methamphetamine from **TINNEY,** such as on 10/30/20 when she called to get six (6) ounces and the next day, 10/31/20, she ordered four (4) more, but ended up getting five (5).  On 11/5/20, agents intercepted a call where CRIGGER says she has 1000**, TINNEY** says he will give her three (3).   On 11/7/20, **CRIGGER** asks for a better price and **TINNEY** tells

her she can get ten (10) for 325 each. During an intercepted series of text messages on December 7, 2020, **CRIGGER** ordered eight (8) ounces of methamphetamine from **TINNEY** and then met with him at an unknown location to receive the methamphetamine. Intercepted communications indicate **CRIGGER** would occasionally obtain methamphetamine in amounts of up to one-half pound at a time. Additionally, at **TINNEY**'s direction, **CRIGGER** obtained new cellular phones for her and **TINNEY** on November 23, 2020. On that day, she also received six (6) ounces from **TINNEY**. These phones include TARGET TELEPHONE #3. On 12/7/20, **CRIGGER** ordered eight (8) ounces. Her relevant conduct is at least 40 ounces.

<u>**BOBBY QUINTON GENTILE -**</u> Pursuant to the Court authorized interception of TARGET TELEPHONE #2 and TARGET TELEPHONE #3, agents determined that **GENTILE** is one of **TINNEY**'s methamphetamine customers and is obtaining methamphetamine in amounts up to nine ounces at a time. During the investigation, law enforcement learned that he would occasionally ride with **TINNEY** to the Houston area to obtain methamphetamine. On December 22, 2020, **TINNEY** and **GENTILE** discussed combining money to take to NEGRETE. **TINNEY** had $6700 and **GENTILE** had $1800, which equates to at least 1.5 kilograms. **GENTILE'S** relevant conduct is over 3.5 kilograms. At the time of his arrest on the Indictment warrant, **GENTILE** was found in possession of a quantity of methamphetamine and two firearms.

<u>**ANTHONY GUTIERREZ – aka Cuzzo**</u>. **ANTHONY GUTIERREZ** was originally identified only as "Cuzzo". He was the subject of TARGET TELEPHONE #4. He was a source of supply to **JOSE GUTIERREZ**. He was intercepted talking over **JOSE GUTIERREZ'** phone and on video at **JOSE GUTIERREZ'** home. On 1/2/21/20, agents intercepted several calls with **JOSE GUTIERREZ** and **ANTHONY** wherein **TINNEY** complains about the dope.

In one call, **ANTHONY GUTIERREZ** references bringing two kilos during one previous deal and another kilo during another deal.  They also discuss **TINNEY** making partial payment with a firearm.  Agents tracked him to Atlanta and Houston on multi kilograms deals.  On 2/28/21, the investigation into him culminated, when**, b**ased on phone interceptions, law enforcement stopped and arrested him at the POE in McAllen with four (4) kilos of heroin and five (5) kilos of methamphetamine as he returned to the United States from Mexico. Relevant conduct is at least eight (8) kilograms of methamphetamine and four (4) kilograms of cocaine.

<u>**JOSE FRANCISO GUTIERREZ -**</u> Pursuant to the Court authorized interception of TARGET TELEPHONE #2 and TARGET TELEPHONE #3**,** agents determined **GUTIERREZ** was a methamphetamine trafficker based in Killeen.  Intercepted communications indicate **GUTIERREZ** supplied **TINNEY** with multi-kilogram quantities on a recurring basis and was one of **TINNEY's** primary methamphetamine sources of supply.  On 10/30/20, **TINNEY** called to get resupplied**.  JOSE GUTIERREZ** said he only had 5 ounces left, but the SOS (source of supply) was on the way.  **TINNEY** said he had 10 and wanted to know if the SOS would have more than one.  **JOSE GUTIERREZ** said he would.  On 11/02/20, **TINNEY** said he just busted into the other one and didn't really like it.  That call made it clear he had been provided with two kilos.  On 11/03/20, **JOSE GUTIERREZ** says they are going to switch out the one **TINNEY** did not like and give him another one.  **TINNEY** said he also had money for another one.  On 11/10/20, **JOSE GUTIERREZ** says he ordered two pizzas for **TINNEY**.   The next day, on 11/11/20**, TINNEY** asked how much he owed, "…he sent 14500 minus 11500 right"**.  JOSE GUTIERREZ** confirmed **TINNEY** owed three.  **TINNEY** asked when it would be in**.  JOSE GUTIERREZ** responded by asking how many burgers **TINNEY** wanted.  **TINNEY** replied he

5

just bought a bike so only one. **JOSE GUTIERREZ** then asked if he wanted another on consignment. **JOSE GUTIERREZ** later confirmed he ordered **TINNEY** two. On 11/20/20, **TINNEY** said he will need to see **JOSE GUTIERREZ** the next day. **JOSE GUTIERREZ** says he ordered **TINNEY** the same pizzas. On 1/2/21, agents intercepted a long series of calls with **TINNEY, JOSE GUTIERREZ**, and **ANTHONY GUTIERREZ,** wherein they discuss the quality of the dope. His relevant conduct is at least ten (10) kilograms. In several intercepted communications, **GUTIERREZ** references "Cuzzo" as his source of supply.

<u>**ASHLEY NICOLE SUTTON –**</u> **SUTTON** is the girlfriend to **TINNEY**. She was intercepted over TARGET TELEPHONE #2 AND #3. She was intercepted over jail calls with LEON BOYD and **TINNEY** arguing about their dealings and a drug debt owed to NEGRETE of about $8,800. **SUTTON** and **TINNEY** took a vehicle from Belton, Texas, to Humble, Texas, to pay off **LEON BOYD's** drug debt to **OSCAR NEGRETE.** Pursuant to the Court authorized interception of TARGET TELEPHONE #2 and #3, agents determined that **TINNEY** provided **SUTTON** with ounce quantities of methamphetamine at a time. During the first controlled buy of methamphetamine from **TINNEY** at the residence that he and **SUTTON** shared, the CI saw a kilogram of methamphetamine. On 9/30/20, the second buy with the CI occurred at **SUTTON'S** new residence for four (4) ounces. There are numerous calls with **TINNEY** where she asks to be resupplied with methamphetamine. In another conversation, **SUTTON** tells **TINNEY** that he is taking too much risk and she suggest that he let her take some of the risk for him. On 11/1/20, agents intercepted a lengthy call wherein she and **TINNEY** discuss NEGRETE selling a Dodge Charger to **BARTON** that **TINNEY** had sold to NEGRETE. On 11/11/20, agents seized one kilogram from **BARTON** in this Charger after he departed the residence of NEGRETE. On

11/25/20, **SUTTON** called to tell **TINNEY** that he had shorted her five (5) grams the last time. She then confirmed with **TINNEY** that she needed two more and sent money via CashApp. Her relevant conduct is at least one kilogram, plus 11 ounces.

**WESLEY WARRICK -** Pursuant to the Court authorized interception of TARGET TELEPHONE #2 and TARGET TELEPHONE #3, agents determined that **WARRICK** is involved with **TINNEY** in the distribution of methamphetamine. Intercepted communications indicate **WARRICK** is being supplied multi-ounce quantities of methamphetamine by **TINNEY** at a time, sometimes up to kilo amounts. At least three different times, he was intercepted ordering about eight (8) ounces of methamphetamine from **TINNEY.** Surveillance has seen **TINNNEY** parked in his driveway. **WARRICK'S** relevant conduct is at least 2.5 kilograms.

**CARLOS AVILA -** Pursuant to the Court authorized interception of TARGET TELEPHONE #2, agents determined that **AVILA** is one of **TINNEY's** methamphetamine customers and is obtaining multi-ounce quantities of methamphetamine on a regular basis. The average amount of methamphetamine that **TINNEY** supplied to him was 2-4 ounces at a time. In an intercepted conversation on 11/1/20, **AVILA** says he has money for half a plate and **TINNEY** tells him a whole would be $350. On 11/15/20, 11/16/20, 11/18/20, 11/19/20/ 11/22/20/ 12/01/20, **AVILA** orders at least one and one on consignment during each of those conversations. At one point, based on intercepts, law enforcement saw him meeting with **TINNEY** and learned from the interception that **TINNEY** was delivering methamphetamine to **AVILA**. His relevant conduct is at least 15 ounces.

**JOE DAVID BECK -**. Pursuant to the Court authorized interception of TARGET TELEPHONE #2 and TARGET TELEPHONE #3, agents determined that **TINNEY** is supplying

**BECK** with ounce quantities of methamphetamine at a time.  On 11/6/20, agents intercepted **BECK** wherein he says he needs to holler at **TINNEY** and that he has $400.  On 11/20/20, **TINNEY** asked **BECK** how much he wants, and **BECK** replies with a whole.  On 12/1/20, **TINNEY** asked **BECK** if he still needed some and **BECK** said he did but won't be paid until the next day.  **TINNEY** replies that one would be cheap, but three or more would be better.  A pole camera installed near **TINNEY'S** residence indicated his presence there on several occasions.  His relevant conduct is at least four ounces.

**LESLEIGH ARIANNE BITTNER** - Pursuant to the Court authorized interception of TARGET TELEPHONE #2 and TARGET TELEPHONE #3, agents identified **BITTNER** as one of **TINNEY's** methamphetamine distributors.  She worked in game rooms, and based on the intercepts, agents believe that she was distributing from there.  On 11/9/20, **BITTNER** asks for the price for a whole one and **TINNEY** quotes her $350 – she tells him she needs it.  On 11/25/20, **BITTNER** says she needs another one, and on 12/7/20, she says she needs two.  In a December 9, 2020 phone call, **TINNEY** supplied **BITTNER** with two (2) ounces of methamphetamine.  She also used CashApp.  Her relevant conduct is at least eight (8) ounces.

**MAXWELL WILLIAM CROUCH -** Pursuant to the Court authorized interception of TARGET TELEPHONE #2 and TARGET TELEPHONE #3**,** agents determined that **CROUCH** was obtaining multi-ounce quantities of methamphetamine from **TINNEY.**  He spoke in a more coded manner than some of the other coconspirators and spoke of money frequently.  On December 16, 2020, agents intercepted a call between **TINNEY** and **GENTILE** where **GENTILE** sent $600 in drug proceeds with **CROUCH** to pay **TINNEY**.  There are many calls

8

between **TINNEY** and **CROUCH** where there is nothing specific, but it is clear that the conversations are about methamphetamine trafficking.

**ALEAH FREITAG -** Pursuant to the Court authorized interception of TARGET TELEPHONE #2 and TARGET TELEPHONE #3, agents identified **FREITAG** as one of **TINNEY'**s methamphetamine distributors. Agents determined that **TINNEY** was supplying **FREITAG** with multi-ounce quantities of methamphetamine at a time. On at least one occasion, she rode with **TINNEY** to deliver methamphetamine to **WARRICK**, according to phone intercepts. The investigation also knew that she has ridden with **TINNEY** to Houston to obtain methamphetamine from NEGRETE. On 12/19/20, **TINNEY** asked if he could get her another phone so that they could talk openly. During a conversation on 11/25/20, **FREITAG was** discussing a murder where someone was killed with a hammer. She then says she has to get off the phone to 'hit a lick'. There are numerous CashApp transactions - on 11/05 for $190, 11/18 for $334, 11/19 for $75, 11/27 for $100, 12/15 $100. Her relevant conduct is at least five (5) ounces.

**KIMBERLY LEE** – **LEE** was a girlfriend to **BARTON.** **LEE** was intercepted over TARGET TELEPHONE #2. She received an average of two ounces of methamphetamine at a time from **TINNEY**. On 10/30/20, **LEE was** intercepted telling **TINNEY** that she has $300 – **TINNEY** tells her not to bring anyone with her. On 11/4/20, **LEE** asks to do the same thing, and on 11/5/20, she asks to do double. When they meet up, she sent a message to **TINNEY** saying that she has her kid in the car with her. Several follow up calls and texts indicate that it was 56 grams. On 12/11/20, **SUTTON** asks **TINNEY** if she can come over, then on 12/12/20, she asks **TINNEY** for another like she got last night. After **BARTON** was arrested**, LEE** brought **BARTON'S t**ruck to **TINNEY**. Her relevant conduct is at least six (6) ounces.

9

**COLTON LANE LEWIS –** A confidential informant ("CI") has conducted multiple controlled methamphetamine purchases from **LEWIS**. At one of these deals, **LEWIS** had two ounces and a gun.    LEON BOYD was supplying methamphetamine to **LEWIS** prior to BOYD's arrest in August 2020. **TINNEY** then became **LEWIS'** supplier. On November 20, 2020, **LEWIS** was interviewed at the Bell County Jail.  During this interview, **LEWIS** admitted to being involved in the distribution of methamphetamine and identified BOYD as his supplier prior to BOYD's arrest.   Law enforcement surveillance, however, observed **TINNEY** at **LEWIS'** shop during the investigation.   On August 19, 2020, agents were conducting surveillance of **LEWIS'** shop and stopped **LORI OLIPHINT** after she left following an apparent dope deal.   Law enforcement recovered one ounce and a gun.    On that same night, another subject was stopped leaving the shop and ¼ ounce was recovered.   His relevant conduct is at least eight (8) ounces.

**ANGELA LOY** -Pursuant to the Court authorized interception of TARGET TELEPHONE #2, agents determined **LOY** was one of **TINNEY's** methamphetamine customers and was obtaining ounce quantities of methamphetamine at a time.    During one intercepted call on 10/29/20, she told **TINNEY** that she needed to get one and a half and then later in a related phone call, she offered to sell a firearm (.38 pistol) to **TINNEY.**   On 10/31/20, 11/2/20, 11/7/20, 12/5/20 and 12/18/20, she ordered between one (1) and two (2) ounces each time.   Her relevant conduct is at least seven (7) ounces.

**FRANK MEDINA JR.** - Pursuant to the Court authorized interception of TARGET TELEPHONE #2 and TARGET TELEPHONE #3, agents determined **MEDINA** was obtaining multi-ounce quantities of methamphetamine from **TINNEY** at a time. On 11/7/20, agents intercepted a call where **TINNEY** asks if **MEDINA** needs just one and **MEDINA** responds that he

needs two.  In a call on 11/13/20, **MEDINA** told **TINNEY** that he got four last time.  On 11/20/20, **MEDINA** told **TINNEY** to take him two donuts and confirms that he got four the last time.  On December 22, 2020, **MEDINA** ordered two (2) ounces of methamphetamine from **TINNEY**. At one point during the investigation, law enforcement observed him following **TINNEY** to **TINNEY'S** residence.   His relevant conduct is at least 12 ounces.

**TIMOTHY NEAL NYQUIST -NYQUIST was** a distributor for **TINNEY,** who was intercepted over TARGET TELEPHONE #2.   During the investigation, he was arrested in Milam County with 61 grams of methamphetamine which came from **TINNEY.**  He was intercepted in multiple calls discussing the distribution of methamphetamine with **TINNEY.**  In a call on 11/6/20, **NYQUIST** told **TINNEY** to chunk him one to get started; then on 11/7/20, **NYQUIST** had another $175 and they agree to meet.   On 11/9/20, **TINNEY** tells him that he will have the second one ready.   During an exchange on 11/16/20, **NYQUIST** says he has $400, his old lady has $400.   He then later complains about the dope and **TIINEY** told him he could bring it back.  Around 12/19/20, there are multiple calls about **NYQUIST** getting stopped and throwing a bag of dope when the Trooper stopped him.   Investigation revealed that the four (4) ounces that he threw had come from **TINNEY**.   His relevant conduct is at least 12 ounces.

**RUSSELL WADE PARRISH -**.   Pursuant to the Court authorized interception of TARGET TELEPHONE #2 and TARGET TELEPHONE #3, agents determined that **PARRISH** was obtaining ounce quantities of methamphetamine from **TINNEY.**  He was intercepted on **TINNEY'S** phone discussing the purchase of methamphetamine. On a 10/30/20 phone intercept, he stated that he was looking for an ounce and **TINNEY** stated that he only had nine (9) grams left**.** **PARRISH** mentioned that his (**PARRISH'S**) daughter charged him $250 per half ounce. The

next day, again **PARRISH** was looking for an ounce and **TINNEY** tells him to come by.  The next day **PARRISH** tells **TINNEY** he has a customer coming and asks if he can come by and get it – **TINNEY** agrees.  On 12/31/20, **TINNEY** told **PARRISH** he was resupplied, but it will be $375 this time.  On 11/24/20, agents asked **PARRISH** to go to **TINNEY'S** residence to obtain **TINNEY'S** new phone number – **PARRISH** says he could not get the number.  Later calls that same day revealed that **PARRISH** got methamphetamine during the meeting.   The investigation revealed messages on CashApp sending money to **TINNEY** for methamphetamine. Relevant conduct is at least five (5) ounces.

      **<u>TRISHA ANN SANCHEZ -</u>** is **TINNEY'**s neighbor.   Pursuant to the Court authorized interception of TARGET TELEPHONE #1, #2, and #3, agents have determined **SANCHEZ** is obtaining methamphetamine from **TINNEY**.  Additionally, intercepted communications indicate **SANCHEZ** assisted **TINNEY** in his methamphetamine distribution by concealing methamphetamine within her residence, collecting money, hiding money and a gun, setting up a surveillance system and weighing methamphetamine for distribution at **TINNEY's** direction.  Based on phone interceptions, she has a money counter very similar to one owned by **TINNEY.** She also sent **TINNEY** money through CashApp.  On November 16, 2020, **TINNEY** called **SANCHEZ** to ask her to check to see if the BMW trunk was open because he left dope in the trunk.  **SANCHEZ** told **TINNEY** to call her daughter to check and said she would log into the surveillance system to check for it.  On another occasion in November 2020, **TINNEY** called **SANCHEZ** and asked her to go into the closet and weigh dope for **AVILA** to pick up, which was four (4) ounces.  Her relevant conduct is at least 11.5 ounces.

Most of the overt acts detailed here occurred within the Waco Division of the Western District of Texas.

Defendant admits that the facts set out in the Factual Basis establish a nexus between the property sought for forfeiture and the criminal offense. Thus, the Defendant agrees that the property is forfeitable to the United States, as proceeds of the criminal offense, or as property facilitating the commission of the criminal offense, or as property involved in the criminal offense.

        Respectfully submitted,

        ASHLEY C. HOFF
        United States Attorney

        /s/ *Stephanie Smith-Burris*

By:    STEPHANIE SMITH-BURRIS
        Assistant United States Attorney